# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**            **CASE NO.  6:19-CR-00360-01**

**VERSUS**                              **JUDGE JUNEAU**

**LATORRIS CONLEY (01)**                **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Suppress. (Rec. Doc. 19). The Government opposed the Motion (Rec. Doc. 26). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. An evidentiary hearing was held on January 14, 2020.[1] Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the Court recommends that Defendant's Motion be denied.

## Factual Background

Defendant was indicted on November 20, 2019 with Count 1, Possession of Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. §922(g)(1). (Rec. Doc. 1). He presented for an initial appearance and was arraigned

---

[1] At Defendant's request, the hearing was held open pending Defendant's counsel's receipt of additional evidence from the Government. Defendant's counsel advised the Court on February 4, 2020 that the evidence and hearing could be closed without further hearing.

on December 9, 2019. (Rec. Doc. 11). He is currently detained pending trial. (Rec. Doc. 12 and 13).

The evidence shows that on September 11, 2019, Defendant was driving a white Chevrolet Impala with a Texas license plate westbound on Interstate 10, when Louisiana State Trooper Langley stopped him for allegedly touching the white fog line. Defendant denies doing so. (Rec. Doc. 19-2, p. 1). Defendant argues that the officer thereafter detained him for an unreasonable amount of time, rendering the stop unconstitutional. (Rec. Doc. 19-2, p. 6-7).

Trooper Langley and Trooper Butts, who later arrived on the scene to assist, testified at the evidentiary hearing. Trooper Langley testified that he received information from another officer, Trooper Ortego, regarding an ongoing investigation involving the white Impala. Trooper Ortego asked Trooper Langley to stop the vehicle and identify the occupants. Upon seeing the vehicle traveling on westbound on Interstate 10, Trooper Langley observed the vehicle veer outside the lane of travel and its right tires touch the white fog line. He pulled the vehicle over for improper lane usage.

Although Defendant requested footage from Trooper Langley's unit's dash camera, Trooper Langley testified that he was in a spare unit at the time, and that spare units were not equipped with dash cameras. Trooper Langley's body camera captured some of the relevant events; however, it did not capture the white Impala

until after Trooper Langley pulled it over and got out of his unit. The body camera also contains some audio of Trooper Langley's initial interactions with Defendant, but at some point, Trooper Langley muted the audio of the camera, because he received a call from Trooper Ortego regarding a confidential ongoing investigation. (Rec. Doc. 30, Ex. 2 at Time Stamp 17:14:45). Trooper Langley testified that he forgot to unmute the audio after the call. As such, much of his verbal interaction with Defendant is unavailable.[2] Trooper Langley's testimony was corroborated by his body camera footage. (Rec. Doc. 30, Ex. 2). Trooper Butts testified that he was eating lunch at the time he received the call for assistance, such that he had turned his body camera off and failed to turn it back on when he responded. Trooper Langley's body camera reveals that Trooper Butts did not appear to be wearing a body camera at all.

    Although Defendant denies having touched the white fog line, his actions and statements, as captured on Trooper Langley's body camera, indicate that he did not deny having touched the white line at that time. (See e.g. Rec. Doc. 30 – Ex. 2 Time Stamp 17:03:41 to 17:04:00; 17:08:36).

---

[2] Also submitted as evidence was the dash camera video from Trooper Butts's unit. Trooper Butts did not arrive until after Trooper Langley made initial contact with Defendant and his passenger, and it did not capture the relevant events as well as Trooper Langley's body camera.

After obtaining Defendant's driver's license and insurance, Trooper Langley approached Defendant's passenger and asked for identification. He then returned to his unit, where he researched their information and answered phone calls. During one such call (with Trooper Butts prior to his arrival), he stated that he had been advised by Trooper Ortego's wife (who also worked in law enforcement) that the car was "loaded with dope." Trooper Langley further told Trooper Butts that he "smelled it," would obtain consent to search, or otherwise call for K9 assistance. (Rec. Doc. 30 – Ex. 2 Time Stamp 17:12:25 to 17:13:29).

Trooper Langley testified that Defendant verbally consented to a search of his vehicle and executed a consent to search form. (Rec. Doc. 30-1). Unfortunately, the audio of Trooper Langley's body camera was off by this time, but Defendant's body language as depicted on the video footage does not indicate that he was forced to execute the form. (Rec. Doc. 30 – Ex. 2 Time Stamp 17:28:49 – 30:27). Trooper Butts testified that Defendant executed the form voluntarily. Trooper Langley then proceeded to search the Impala, where he discovered marijuana and a pistol in a compartment behind the dash screen.[3] Defendant and his passenger were arrested and transported to the Acadia Parish jail.

---

[3] He also found a stack of money, which appears to total approximately $500. Trooper Langley testified that he left the money in the vehicle after the arrest, and the vehicle was eventually towed away.

4

## Law and Analysis

Defendant's Motion to Suppress invokes the exclusionary rule, as it seeks to preclude the Government from introducing at trial certain evidence, specifically the gun and marijuana uncovered in the search of Defendant's vehicle. "The exclusionary rule was created by the Supreme Court to 'supplement the bare text' of the Fourth Amendment, which 'protects the right to be free from 'unreasonable searches and seizures,' but ... is silent about how this right is to be enforced.'" *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied,* 140 S. Ct. 276 (2019), citing *Davis v. United States*, 564 U.S. 229, 231 (2011). The exclusionary rule operates to exclude the prosecution from introducing evidence obtained unconstitutionally. *Id*. Its purpose is to deter officer misconduct, not to redress injury to the victim of a constitutional violation or to address judicial errors or misconduct. *Id*., citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011) and *United States v. Leon*, 468 U.S. 897, 916 (1984).

Generally, "the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). However, if the defendant produces evidence that he was the subject of a warrantless search, the burden shifts to the Government to justify the warrantless search. *Id.* In

a case involving a traffic stop, such as this, the Fifth Circuit set forth the applicable law as follows:

> The reasonableness of traffic stops and investigative detentions of persons suspected of criminal activity is evaluated through a two-step inquiry under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Stevens,* 487 F.3d 232, 244 (5th Cir.2007). First, we determine whether stopping the vehicle was initially justified by reasonable suspicion. Second, we evaluate whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. In the context of a traffic stop, once an officer's initial suspicions "have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada,* 459 F.3d 627, 631 (5th Cir.2006).
>
> *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

The Government bears the burden of establishing these elements by a preponderance of the evidence. *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010); *United States v. Martinez*, 486 F.3d 855, 859–60 (5th Cir. 2007). Applying the foregoing two-step analysis, the Court must first determine whether the initial stop was justified by reasonable suspicion. If Defendant did not, in fact, commit a traffic offense, the stop was unjustified. *United States v. Cole*, 444 F.3d 688, 690 (5th Cir. 2006).

No video footage of the initial traffic violation—Defendant's veering onto the white line—exists. Trooper Langley testified that he observed the outer wheels of the Impala touch the white line. Although Defendant now denies doing so, the video footage from Trooper Langley's body camera suggests that he did not deny having

done so at the time. Rather, Defendant seems to have been attempting to justify his actions prior to being pulled over. (Rec. Doc. 30, Ex. 2 at Time Stamp 17:03:41 to 17:04:00; 17:08:36).).

Trooper Langley testified that Defendant violated the law of improper lane usage. Under Louisiana law, "crossing the fog line onto the shoulder and out of one's lane of travel has repeatedly been recognized as a lawful reason for a traffic stop." *State v. Burney*, 47,056 (La. App. 2 Cir. 5/23/12), 92 So. 3d 1184, 1192, *writ denied,* 2012-1469 (La. 1/11/13), 106 So. 3d 548, citing cases. Thus, the Court finds that the evidence supports that Defendant committed the traffic offense of improper lane usage, such that Trooper Langley was justified in stopping Defendant for a traffic violation.

The fact that Trooper Langley had been asked by other law enforcement to stop the vehicle and identify the occupants because the vehicle was suspected of drug trafficking does not render the traffic stop unconstitutional. An officer may permissibly stop a vehicle based on pretext as long as the defendant committed a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996). In other words, when an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation or whether his true motive is to investigate unrelated criminal offenses. *Id.* at 810; 813 (1996). *United States v. Sanchez–Pena*, 336 F.3d 431, 437 (5th Cir. 2003).

Having found that Trooper Langley's initial stop was justified by reasonable suspicion that Defendant committed a traffic violation, the Court must next determine whether the officer's actions were reasonably related in scope to the circumstances justifying the stop. A traffic stop based on reasonable suspicion that the defendant has violated a traffic law "cannot continue for an excessive period of time or resemble a traditional arrest." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.,* 542 U.S. 177, 185-86 (2004). "[A] traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015), quoting *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). "The time reasonably required to complete the mission of issuing a traffic ticket can include the time it takes to inspect the driver's license, automobile registration, and proof of automobile insurance; run computer checks; determine whether there are outstanding warrants against the driver; and ask the purpose and itinerary of the trip." *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016), citing *Rodriguez,* 135 S.Ct. at 1615 and *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of rehearing*, 622 F.3d 383 (5th Cir. 2010).

> There is, however, no constitutional stopwatch on traffic stops. Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly."

8

>*United States v. Brigham,* 382 F.3d 500, 511 (5th Cir. 2004), quoting *United States v. Sharpe,* 470 U.S. 675, 686 (1985).

"An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *United States v. Berry*, 664 F. App'x 413, 418 (5th Cir. 2016), *as revised* (Dec. 14, 2016), quoting *Pack*, 612 F.3d at 350. See also *United States v. Andres,* 703 F.3d 828, 833 (5th Cir.2013).

Defendant argues that Trooper Langley stopped him for an unreasonable amount of time, longer than the time necessary to check his information and issue a citation. The Government counters that Trooper Langley developed probable cause of additional criminal activity during the initial traffic stop. Trooper Langley's body camera video shows that approximately two minutes elapsed between the time of the stop and the time Trooper Langley first approached the passenger, presumably the first opportunity he had to smell marijuana. (Rec. Doc. 30 – Ex. 2, Time Stamp 17:03). He again approached the passenger in the vehicle to confirm his identification eight and one-half minutes after the stop, before having completed the background checks. (Rec. Doc. 30 – Ex. 2, Time Stamp 17:09). He told Trooper Butts in a call less than twelve minutes after the stop that he had smelled marijuana. (Rec. Doc. 30 – Ex. 2, Time Stamp 17:12). Ultimately, thirty-three minutes elapsed

9

between the time Trooper Langley stopped Defendant and the time of the arrest. The Court finds that none these periods of time was unreasonable.

This case is factually similar to *United States v. Pack*, wherein the Fifth Circuit considered the situation in which the officer stopped a driver at 8:45 for a traffic violation and completed his initial information check, including questioning the passenger (the defendant), by 9:10. However, in the interim, at 8:51, the officer observed the defendant's suspicious conduct ultimately leading to the search. *Pack*, at 345; 361. The court held that a detention of thirty-five minutes, between the time of the initial stop and the time the officer discovered a weapon and drugs, considering that the defendant did not consent to a search and a K-9 had to be called, was not unreasonable. *Id*.

Trooper Langley testified that he smelled marijuana when he first questioned the passenger, which occurred approximately two minutes into the stop. Upon smelling marijuana, Trooper Langley had probable cause to search. *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) ("Indeed, the smell of marihuana alone may be ground enough for a finding of probable cause, as this Court has held many times."). Like the officer in *Pack*, Trooper Langley developed probable cause of criminal activity (smelling the marijuana) prior to having had the opportunity to

complete the background checks. Therefore, detaining Defendant longer than might otherwise be necessary to run background checks and issue a citation was justified.[4]

After developing probable cause to search, Trooper Langley obtained Defendant's consent to search the vehicle. A valid consent to search is an exception to the requirement that a warrant must initiate a search. *United States v. Zavala*, 459 Fed.Appx. 429, 433 (5th Cir. 2012) (citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)). Defendant did not challenge the validity of his consent to search. All evidence supports that Defendant voluntarily consented to the search. (See Rec. Doc. 30-1; Rec. Doc. 30, Ex. 2 at Time Stamp 17:28 – 17:30).

The Court finds that Trooper Langley had reasonable cause to stop Defendant for committing the traffic offense of improper lane usage. Trooper Langley developed probable cause of additional criminal activity upon smelling marijuana after approaching Defendant's passenger for information within approximately two minutes of the stop. Therefore, even though Trooper Langley detained Defendant

---

[4] The Court makes no specific finding on the maximum reasonable length of time for basic traffic violation investigation. Reasonableness is a fact-specific inquiry. See *Brigham,* 382 F.3d at 507 ("The correct analysis requires district courts to consider the facts and circumstances of each case...to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances."). It is unclear from the video the point at which Trooper Langley completed his research, but it appears to have been less than twenty minutes after the stop. Regardless, this timing is irrelevant considering that he had by that point developed probable cause.

after having obtained the necessary background information in order to conduct a search, Trooper Langley did not violate the Fourth Amendment.

## Conclusion

For the reasons discussed herein, it is recommended that Defendant's Motion to Suppress (Rec. Doc. 19) be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Crim. P. 59(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Crim. P. 59(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 5th day of February, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE