UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  6:19-CR-00360-01** |
| **VERSUS** | **JUDGE JUNEAU** |
| **LATORRIS CONLEY (01)** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## MEMORANDUM RULING AND ORDER

Before the Court is defendant Latorris Conley's Motion for Judgment of Acquittal or alternatively for a New Trial.  Rec. Doc. 85.  This Motion is opposed.  For the following reasons, the Motion for Judgment of Acquittal and the Motion for a New Trial is **DENIED.**

I.   Factual and Procedural Background

This matter stems from a traffic stop of a car driven by defendant Latorris Conley on September 11, 2019.  Rec. Doc. 1.  During that stop, the officer smelled marijuana, searched the car and found a firearm.  Latorris Conley was then arrested as he is a convicted felon who is prohibited from knowingly possessing a firearm.  The knowing possession of a firearm was the sole charge brought against the defendant.

At trial, the only contested element of the charge was whether the defendant knew that he was in possession of the firearm. All the other elements of the charge were either agreed to by stipulation or uncontested at trial. To prove that the defendant knowingly possessed the firearm, the government relied primarily on the testimony of Trooper Langley, supported by video and partial audio footage of the stop. Trooper Langley's testimony described the stop, the subsequent search, as well as interactions with the defendant at the Acadia Parish Jail after the defendant and his passenger were arrested. Trooper Langley also testified that the defendant ultimately admitted that the firearm discovered in the car was his while in custody at the Acadia Parish Jail. The defense sought to impeach Trooper Langley through pointing out several inconsistencies in his testimony as well as by discussing gaps in the audio and visual recordings. For example, Trooper Langley had turned off his bodycam audio at some point during the stop but failed to start it again so much of the stop has only video. Additionally, while there is video of Trooper Langley and the defendant speaking at the Acadia Parish Jail, there was no audio so Trooper Langley's testimony of the defendant's statement claiming the gun is the only evidence of his confession.

After the government closed their case, the defendant orally moved for a Judgment of Acquittal. This was denied as the Court found that the evidence,

viewed in a light most favorable to the government, could lead a reasonable jury to find the defendant guilty beyond a reasonable doubt.

The defense then presented their case, calling both the defendant and his mother as witnesses.  The defendant claimed that he did not know that the firearm was in his mother's car which he borrowed to visit the doctor that day.  The defendant's mother testified that the car was hers, that she had stored the firearm in a compartment in the console for several years and that she had not notified anyone about the existence of the firearm.   Because the defendant raised the defense that he did not know about the firearm, the Court gave special jury instructions informing the jury that they could not find knowing possession simply because the defendant was driving the car at the time.

During the prosecution's rebuttal during closing arguments, the defendant objected one time, arguing that the prosecution's statement regarding the ability of the defendant to subpoena Officer Butts shifted the burden of proof to the defendant.  Rec. Doc. 86, p. 20, lines 2-13.  The Court overruled that objection, and the defense did not further object during the prosecution's rebuttal.  After the closing statements, but before the jury instructions were read, the defense renewed this single objection regarding the burden of proof.  *Id.*, p. 31-32, lines 14-9.  No additional objections were made at that time.

After deliberations, the jury returned a unanimous guilty verdict. After the jury was excused, the defense renewed their oral Motion for Judgment of Acquittal and at this time voiced several new objections to the prosecution's rebuttal. The oral motion was again denied, and the defendant then filed their timely Motion for Judgment of Acquittal and alternatively for a New Trial now before the Court.

II. Motion for Judgment of Acquittal

a. Legal Standard

The standard for a Motion for Judgment of Acquittal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Court must view "the evidence and all reasonable inferences drawn from it…in the light most favorable to the Government." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). Further, "all credibility determinations are made in the light most favorable to the verdict." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999). Essentially, "the court assumes the truth of the

evidence offered by the prosecution" to determine if that evidence is sufficient to support a conviction. *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997). A "verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996). Thus, the key question is whether there is sufficient evidence, viewed in the light most favorable to the prosecution, to allow any rational trier of fact to find the defendant guilty beyond a reasonable doubt.

b. Analysis

Here, the Court finds that the evidence presented, especially when viewed in the light most favorable to the prosecution, was sufficient to sustain a conviction. As previously mentioned, the sole element contested at trial is whether the defendant knew about the firearm which was found in the car.

At trial, the government put forth evidence that if true would sustain the conviction of knowing possession of the firearm. Trooper Langley testified that he pulled Mr. Conley over for a traffic violation. Both Trooper Langley's testimony and the video recording of the stop show that the defendant presented Trooper Langley with his driver's license as well as insurance paperwork bearing Mr. Conley's name. During the stop, Trooper Langley contacted the passenger who

was still in the car and testified that he smelled the odor of marijuana in the car. This led Trooper Langley to initiate a search of the car, to which Mr. Conley consented. During that search, Trooper Langley testified that he found a firearm with ammunition and marijuana in a covered console in the car. Trooper Langley then testified that the defendant, when asked about the firearm, claimed first that he had not known about the firearm, then later said that the gun belonged to his mother's boyfriend. Trooper Langley further testified that he personally spoke to Mr. Conley once again at the Acadia Parish Jail and that during this conversation, Mr. Conley claimed that both the firearm and marijuana were his. This evidence, when assumed as true, is sufficient for a rational trier of fact to conclude that the defendant was guilty.

In his briefs, the defendant points to his own testimony and that of his mother which sought to rebut the government's case. This testimony sought to show that the defendant's mother had bought the firearm and stored it in the car for over two years. According to the defendant and his mother, Mr. Conley only briefly borrowed the car and did not know about the presence of the firearm until he sought to hide the marijuana when stopped by Trooper Langley. The defendant then claimed that he made the incriminating statement at the jail to make sure his friend was released.

Certainly, this evidence from the defense presented an alternative theory of the case to the jury. However, this does not negate the fact that a rational trier of fact could still reasonably find that Mr. Conley knowingly possessed the firearm if they believed Trooper Langley's testimony over that of Mr. Conley and his mother. After all, it is the jury, not the court, who remains "the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). Further, the "evidence need not foreclose every possible theory of innocence" and the "jury is free to choose among reasonable constructions of the evidence." *United States v. Santillana*, 604 F.3d 192, 196 (5th Cir. 2010).

In summation, the key question is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt based on the evidence presented at trial. Here, the evidence presented, when viewed in the light most favorable to the government, shows knowing possession of the firearm through Mr. Conley's statement to Trooper Langley claiming that the firearm and marijuana were his. Based on this, the Court remains convinced that a reasonable juror could find that the government proved beyond a reasonable doubt that Mr. Conley was in knowing possession of the firearm. Consequently, the Motion for Judgment of Acquittal is **DENIED.**

III.     Motion for New Trial

Federal Rule of Criminal Procedure 33 allows a court, upon motion by the defendant, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Such motions, however, are "disfavored and reviewed with great caution." *United States v. Erwin*, 277 F.3d 727, 732 (5th Cir. 2001) (citing *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001)). With a Motion for a New Trial, the court can "weigh the evidence and may assess the credibility of the witnesses." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) (citing *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982)). The court should grant these motions only if "there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997)). There are two basic types of Rule 33 motions, those based on newly discovered evidence, and those based on "other grounds." *Wall*, 389 F.3d at 466. In this case, the court is only presented with "other grounds" which would require a new trial only where there were "adverse effects on substantial rights of the defendants." *United States v. Cooks*, 52 F.3d 101, 103 (5th Cir. 1995).

In their motion, the defendant argues that there are several "other grounds" that would warrant a new trial, namely that: 1) the prosecution

improperly attacked the credibility of the defendant and defendant's mother during their closing argument, 2) that the prosecution's comments referencing Officer Butts in their closing statement both flipped the burden of proof and also improperly bolstered Trooper Langley, 3) that the prosecution improperly bolstered their case in the closing statement by referring to their role as Assistant United States Attorneys, 4) that the prosecution mischaracterized evidence or made statements regarding evidence that was not in the record and 5) that the prosecution improperly introduced character evidence.  Since most of these alleged errors focus on the prosecution's statements in closing argument, the court will first look at relevant law on that topic generally and then review each of the alleged errors in turn.

Generally, "[c]ounsel is afforded much latitude during closing argument" and courts "do not lightly make the decision to overturn a criminal conviction on the basis of a prosecutor's remarks alone."  *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001).  Indeed, to grant a new trial on these grounds, the Court must find that the "remarks cast serious doubt on the correctness of the jury's verdict."  *Id.* (quoting *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989)).  In analyzing a challenge to prosecutorial statements, the court must first determine whether the prosecution committed error.  If the Court finds that

there was an error, then the court must evaluate three factors in determining whether to overturn the verdict: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994). Notably, "[w]hile an attorney may not express personal beliefs concerning the merits of a case, it is proper to urge a conclusion based on the evidence." *United States v. Rodarte*, 596 F.2d 141, 146 (5th Cir. 1979) (citing *United States v. Diharce-Estrada*, 526 F.2d 637, 641-42 (5th Cir. 1976)). The Court will now turn to look at each of the defendant's arguments in turn.

    a. Analysis

        i. Improper Attack on Credibility on Defense Witnesses

The defendant's main argument in support of their Motion for a New Trial is that the prosecution improperly attacked the credibility of both the defendant and his mother who testified for the defense during their rebuttal. Determining whether an error occurred on this topic is often challenging as it is proper to comment "that a defendant lied on a particular occasion" but remains improper to attack the defendant's character directly. *United States v. Poole*, 735 F.3d 269, 277 (5th Cir. 2013). A prosecutor can illustrate and mention specific instances of

lying, so long as "such a characterization is reasonably seen as drawing conclusions from, and is actually supported by, the evidence." *Id.* (quoting *United States v. Bush*, 451 F.App'x 445, 451 (5th Cir. 2011)). It is improper, however, if the prosecution attacks a witness's character by inserting their personal opinion. *Poole*, 735 F.3d at 276-77.  Thus, the key to whether an attack on a witness's credibility is valid is whether the prosecutorial statements are sufficiently tied to an evidentiary analysis

      Here, the Court finds that the statements made in the prosecution's closing argument were sufficiently tied to the evidence to characterize a proper attack on the credibility of the defense witnesses.  Two examples may illustrate this point.  As one example, the prosecution pointed out that the stories told by the two defense witnesses regarding the timing of the defendant picking up the car did not match before claiming that the "stories don't match because they are lies." Rec. Doc. 86, p. 24-25, lines 16-1.  Another example occurred when the prosecution pointed out that the defendant's mother both failed to warn the defendant about the firearm in the car and then did not follow up on the defendant's whereabouts until the following day.  The prosecutor then argued by inference that the defendant's mother's story did not make sense because it's a lie.  *Id.*, p. 27-28, lines 20-16.  While the prosecution did make several statements

questioning the veracity of the defense witnesses, each instance was done in connection with a detailed discussion of the testimony heard at trial. As such, the Court finds that the prosecution's statements regarding the credibility of the defense witnesses were reasonable and proper arguments based on the evidence rather than an improper attack on the witnesses' character.

### ii. Comments regarding Officer Butts

The defense also argues that the prosecution improperly discussed Officer Butts in their rebuttal, arguing both that the statement in question shifted the evidentiary burden to the defendant and that it improperly bolstered Trooper Langley.

The statements regarding Officer Butts were in direct response to the closing statement of the defendant. In their closing, defense counsel discussed the fact that Officer Butts had not testified, essentially arguing that Officer Butts was vital to proving the government's case and asking that "[i]f Butts was good for the government, don't you think they would have put him on?" *Id.*, p. 11, lines 17-19. In response, the government argued that they felt that Officer Butts testimony would have been "cumulative, duplicitous, and simply a waste of [the jury's] time" since Trooper Langley was the key officer, and pointed out that the

defense could have called Officer Butts if they felt he would have hurt the government's case.  *Id.*, p. 19-20, lines 20-14.

The defense first argues that the government's response shifted the burden of proof by misleading the jury into believing that the defendant had any burden of proof.  The case of *United States v. Palmer* is instructive on this point.  *United States v. Palmer*, 37 F.3d 1080 (5th Cir. 1994).  In *Palmer*, the defense counsel in the closing statement referenced several witnesses that the government had not called before telling the jury "[y]ou can ask yourself, well, what version would they have given if they were here?"  *Id.* at 1086.  In response, the government pointed out that the defense could have called these witnesses.  When the defense objected that this statement shifted the burden of proof, the district court denied the objection.  Upon review, the Fifth Circuit said that there was no error as the government was merely responding to the defense and informing the jury that the defense could have called these other witnesses.

The situation is similar here.  In their closing, the defense discussed the fact that Officer Butts did not testify and asked the jury that "[i]f Butts was good for the government, don't you think they would have put him on?"  Rec. Doc. 86, p. 11, lines 17-19.  In response, the government pointed out that if the defense thought he would undermine the government's case, they could have called him

as a witness. *Id.*, p. 19-20, lines 20-14.  As in *Palmer*, this Court does not view this brief interaction as shifting the burden of proof.  Rather, the Court views this short statement as an appropriate response to the defense's statements regarding Officer Butts.  Further, the Court repeatedly instructed the jury that the burden of proof was exclusively with the government.

The defense has also argued that the prosecution improperly bolstered Trooper Langley's testimony by explaining that they did not call Officer Butts because he was backing up Trooper Langley and that his testimony "would have been cumulative, duplicitous, and simply a waste of your time." *Id.*, p. 19, lines 23-24.  The key concern about a statement such as this is that it will either lend credence to a witness or that it implies the existence of additional evidence that was not presented to the jury. *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995).  Here, the remarks by the government were responding to the defense's argument that the lack of testimony by Officer Butts undermined the government's case.  The Court fails to see how this could be considered bolstering to Trooper Langley.  Rather, these comments seem to explain why the government had not called Officer Butts, namely that the prosecution did not feel that he was needed because Trooper Langley conducted the investigation and Officer Butts had no additional information to provide.  If there was any

implication that either party knew additional information that was not introduced at trial, it was the defendant, and not the prosecution who introduced that implication.  The government merely responded by saying they did not feel the need to call Officer Butts as, from their perspective, he had no relevant information to offer the jury.

      iii.  Improper Bolstering

The defense next objects to the statement of the prosecution referring to their job and saying that it is their "job as assistant United States attorneys to protect and defend the interests of the United States of America and its citizens" claiming that this was improper bolstering.  Rec. Doc. 86, p. 18, lines 15-17.  However, this statement was made as part of a brief discussion of the burden of proof that the prosecution carries.  It did not encourage the jury to believe the prosecution or its witnesses.  Rather, this statement served to emphasize the burden of proof that the prosecution carries to prove its case beyond a reasonable doubt and that the prosecution took that burden seriously.

      iv.  Mischaracterization of Evidence

The defense argues that the prosecution mischaracterized evidence throughout their rebuttal.  However, "[i]t is well established that an attorney may recite to the jury those inferences and conclusions he wishes them to draw from

the evidence so long as they are based on the evidence." *United States v. Webb*, 950 F.2d 226, 230 (5th Cir. 1991) (citing *United States v. Davis*, 831 F.2d 63, 66 (5th Cir. 1987)). In this case, the prosecution argued a number of inferences that could be drawn from the evidence at trial. For example, at trial there was evidence presented that the defendant's mother primarily lived in Houston, Texas and that she did not come to get the defendant or even follow up regarding his situation until the day after his arrest. The prosecution then used this evidence to draw an inference that this delay was because the mother was in Texas, not Louisiana. Rec. Doc. 86, p. 28, lines 17-23. While this is not the only inference that could have been drawn from the evidence, it is one inference which could be drawn, and the prosecution was free to do so. The Court finds that the inferences drawn by the prosecution in their closing statements are sufficiently based in evidence and that they were not improper argumentation.

      v. Improper Character Evidence

Finally, the defense objects that improper character evidence was admitted into the trial. During the prosecution's cross-examination of the defendant, the Court did allow the prosecution to ask the defendant about several convictions, as is proper under Federal Rule of Criminal Procedure 609. Fed. R. Crim. P. 609(a)(1)(B). Further, these convictions had been stipulated to and were thus in

evidence. However, the Court did prevent the Government from asking questions about the underlying actions in those convictions out of concern that discussing the details of the conviction may lead to undue prejudice. At no point did the government go beyond the limited grounds allowed by the Court and at no point did the jury hear evidence of the prior bad acts beyond the fact that he had these convictions, which was properly introduced. Thus, the Court finds no error.

      vi. Errors Insufficient for New Trial

As discussed above, the Court does not find that the statements made by the Prosecution in their rebuttal were error. However, the Court finds that even if there were errors made, none of these errors were prejudicial enough to merit overturning the jury's verdict for several reasons. First, any potential errors were limited solely to the government's rebuttal. All the arguments made were based on inferences drawn from the testimony heard at trial. In essence, the Court finds that the magnitude of any potential errors was small. Further, the Court specifically had jury instructions on each of these alleged errors, namely by reminding the jury that the closing arguments were not facts and that the government alone carried the burden of proof. Thus, if there were any errors, there were curative instructions given to the jury, and these jury instructions were provided to the jury to review in their deliberations. Finally, as to the

strength of the evidence supporting conviction, Trooper Langley testified that the defendant had claimed the firearm was his.  Thus, even if there was error, the Court does not find that any alleged error was prejudicial enough to "cast serious doubt on the correctness" of the jury's decision.  *Virgen-Moreno*, 265 F.3d at 291.

IV.   Conclusion

For the foregoing reasons, both the Motion for Judgment of Acquittal and the Motion for a New Trial are **DENIED**.  The Court finds that the evidence was sufficient to allow a rational trier of fact to find the defendant guilty.  The Court further finds that the alleged errors in the prosecution's closing statements do not constitute error, and that even if there was any error it was not substantial enough to justify overturning the verdict of the jury.

**THUS DONE AND SIGNED** in Lafayette, Louisiana, on this 20th day of December, 2021.

_____
MICHAEL J. JUNEAU
UNITED STATES DISTRICT JUDGE